Carr, J.
This case presents the question, Whether a contract is legal, by which a sheriff contracts, that another shall exercise the duties of his office, and have all the fees, privileges and emoluments of it, and, in consideration thereof, shall pay to the sheriff a gross sum, unconnected in any manner with the fees of the office? This question depends on our statute, which prohibits the. sale of any office, or deputation of office, Sic. touching the administration or execution of justice, or the receipt or payment of the public revenue, or any clerkship in a court of record; subjects the persons offending to penalties and disabilities; and pronounces all such bargains and sales, bonds, covenants, &c. utterly void, &c. provided, that nothing in the act shall be so construed as to prohibit the appointment, qualification and acting of any deputy clerk or deputy sheriff, who shall be employed to assist their principals in the execution of their respective offices. 1 Rev. Code, ch. 145. p. 559. This act is taken from 5 and 6 Ed. 6. c. 16. with some difference as to the eotent of the law, and also with the exception, that the english statute has no such proviso as ours.
That the enacting part of this law extends to the office of sheriff, is most dear, both from its words and the excep *45 lion in the proviso. This was acknowledged on all hands . . m the argument. It is settled by many cases, that where an office is within this statute, and the salary is certain, if the principal make a deputation, reserving a less sum out oj the salary, it is good ; so, if the profits be uncertain, arising from fees, if the principal make a deputation, reserving a certain sum out of the, fees and profits of the office, it is good; for in these cases, the deputy is not to pay, unless the profits arise to so much; and, though a deputy, by his constitution, is in place of his principal, yet he has no right to his fees; they slill continue to be die principal’s; so that, as to him, it is only reserving a part of his own, and giving away the rest to another. But, where the reservation or agreement is not to pay out of the profits, but to pay generally a certain sum, which must be paid at all events, this is a sale of the office; and a bond for the performance of such an agreement is void by the statute. This construction of the law, settled by numerous english cases (Sir Arthur Ingram’s case, Co. Litt. 234. a. Doct. Trevor’s case, Cro. Jac. 269. 12 Co. Rep. 78. Woodward v. Foxe, 3 Lev. 289. 2 Vent. 187. 3 Inst. 148. Layng v. Paine, Willes’s Rep. 571. Parsons v. Thompson, 1 H. Bl. 322. Garforth v. Fearon, 1 H. Bl. 327. Law v. Law, Ca. Temp. Talb. 140. 3 P. Wms. 391. S. C. Harrington v. Du-Chatel, 1 Bro. C. C. 124.), has also been adopted by this court in Noel v. Fisher, 3 Call, 215. a case which arose before our law, and was decided under 5 and 6 Ed. 6. c. 16. then in force here. It being thus settled, that the office of sheriff is within the enacting part of this law, and that a deputation for a sum in gross is a sale of the office, and void; the case at bar must be clearly within the statute, unless the proviso can receive such a construction, as to repeal the enacting clause wholly, so far as relates to the deputation of the offices of sheriff and clerk. It is contended, that this construction must be given to it; and the tenor of the reasoning on which this idea rests is (if I understand it) the following: The proviso must be intended to have some effect, to withdraw from the operation of *46 the law, some case or class of cases, which would otherwise be within it. Literally, it imports that nothing m the act shall be taken to prohibit the appointment of a deputy clerk and sheriff, to assist their principals in the execution of their offices; but there was nothing in the act which did prohibit this; and, therefore, there is no function for the proviso taken in the limited sense. We must then enlarge its meaning, till it reach some enactment of the law; as it stands, taken literally, it would make the act read thus : No sheriff shall sell the deputation of his office, provided, however, that this shall not be so construed, as to prohibit a deputation made without a sale. To avoid this absurdity, where the pj-oviso says, that nothing in die act shall prohibit the appointment, qualification and acting of a deputy clerk or sheriff, we must construe it to mean, that nothing in the act shall prohibit the sale of the deputation of clerk or sheriff
To this reasoning, I cannot assent. There seem to me several insurmountable objections to it. In the construction of statutes we are told from high authority, that “ when the words are doubtful and uncertain, it is proper to inquire what was the intent of the legislature; but where they have expressed themselves in plain and clear words, it is very dangerous for judges to launch out too far in searching into their intent.” In the. enacting clause, the statute prohibits, in the strongest and clearest terms, the sale of certain offices, and deputations of offices; among these, the office of clerk is expressly named, and that of sheriff so described, that the law embraces it just as clearly as if it had been named. The proviso says, that nothing in the act shall prohibit the appointment, qualification and acting of any deputy clerk or deputy sheriff How can we understand the appointment, qualification and acting of deputy clerics and sheriffs, to mean the sale of the deputation of these offices ? does appointment mean sale? can there be no appointment but by a sale ? When the law uses words of known and settled meaning, we must give them that meaning. The word appointment is one of frequent use and determinate *47 meaning, in the law: many statutes regulate the appointment of deputies (sheriffs, clerks, surveyors and others); and I fancy it would puzzle the research of the most indefatigable, to produce a single instance in which the word is used to signify a sale. When the act meant to forbid the sale of offices, it used plain terms, “no person shall bargain or sell any office, &c.” If it had intended in the proviso to except from the operation of the act, the sale of the deputations of clerk and sheriff, was it not natural to have used the same terms, and to have said, “nothing in this act shall be construed to prohibit the bargain or sale of the deputations of clerk or sheriff?”
This construction not only violates the plain language of the law, hut the nature of a proviso also; the office of which is not to repeal the enacting clause, but to modify it. The legislature is not to be supposed to intend to contradict, in the latter clause of a law, what they had enacted in a former ; but to limit and explain the general words of the enactment. And this explanation is often out of abundant caution, excepting from the operation of the law, expressly, cases which by fair construction would not have come within its range. But here you make the law say, “ no sherifi or clerk shall sell the deputation of his office; provided, nevertheless, that nothing in this act shall be so construed as to prohibit a sheriff or clerk, from selling the deputation of his office. If the legislature had used these words, the courts could not, have helped it: but is it right to make them speak thus, by a construction which violates the palpable meaning of the words it has used ? and this, on the ground solely, that the proviso, will be inefficient, unless you give it this extent?
But if we must look for the intent of the legislature, what was the general object of this law? .It is entitled, “an act against the buying and selling of offices.” The preamble to the english statute, from which ours is taken, states the objects to be, to avoid corruption he. and to the intent, that persons worthy and meet to be advanced to the place where justice is to be administered, or any service of trust executed. *48 shall hereafter be preferred to the same, and no other &c. In Layng v. Paine, chief justice Willes, in delivering the opinion of the court, says, there were two principal reasons for making that statute; 1. that offices might be exercised by persons of skill and integrity; and 2. that they might take only the legal fees; for (he adds) “those who buy their offices, will be apt to make more than their legal fees, according to what is said 3 Inst. 348. they that buy will sell.” Now are not the offices of clerk and sheriff within the mischief and the reason of this statute, as well as the letter? Is it not important to the community, that these offices should be exercised by persons of skill and integrity ? Do they not furnish the greatest facilities, and the strongest temptations, to imposition and extortion ? What officer is there, so closely and intimately connected with the people, in all their civil relations, as the sheriff? In the collection of taxes, the service of process, the levying of executions, the sale of property, and in various other ways, he has it in his power to harass and oppress them, by means so easy of practice, so difficult of detection, as to offer the strongest possible temptations ; so strong indeed, that none but the firmest and most upright minds cam be expected to resist them. For the judicious selection of this officer, the law has shewn itself very solicitous, however its provisions may have been neglected or perverted in practice. The justices of the peace, we know, are appointed for their good’character, and form a most respectable class of the community: out of this body, the court of every county is directed, annually, to nominate to the governor three persons, one of whom, being approved by the governor with the advice of the privy council, shall be commissioned to execute the office of sheriff. What greater caution could the legislature have observed, to ensure the filling this office by men of skill and honesty? And can we suppose, that this same legislature intended, that so soon as the sheriff was appointed, he should set up his office for sale to the highest bidder ? That when passing a law, prohibiting, under severe penalties, the sale of offices, which *49 in any wise touch the administration or execution of justice, J or the receipt or payment of the public revenue, they should, by a, proviso, mean to say, nothing in this act shall prevent a sheriff from selling his office to a deputy? and that, too, when the law only says, nothing shall prevent his appointing a deputy to assist him1 What is the natural effect of this license to sell? The sheriff considers the office as a source of profit merely; as something given him to make money by: and the more he can make by it, the better. He sets it up for sale: When a bidder offers, what are the considerations which influence him ? Does he ask, which among all these will administer the office with most skill and integrity, with least oppression, extortion, and vexation to the people? By no means: but, which will give me the highest price, and best secure me against the consequences of his misdeeds, should they be discovered? Having secured these points, he makes over his office, and divests himself, so far as he can, of all its duties and its cares. What is the view of the buyer ? Not, assuredly, to benefit the people, but to better his own condition; to make money. He has probably been screwed up, by competition, to a high price, and is turned loose upon the people, not merely to indemnify himself (for no man will work for nothing), but to make the most of his bargain; and, having bought for gain, an office presenting so many tempting opportunities for extortion and speculation, who can wonder, that he should seek to improve them to the utmost? And thus would be violated the second great object of the statute against buying and selling of offices, which chief justice Willes states to be, that the legal fees only should be taken; for those who buy their offices will be apt to make more than their legal fees, according to what is said in 3 Inst. “ those that buy will sell.” Thus, whether we consult the plain language of the law, or the intention of the legislature, it is equally clear to me, that the sale of the deputation of the offices of clerk and sheriff, so far from being sanctioned and legalized, is expressly prohibited.
*50 It was said, that while the enacting clause prohibits the sale of the. offices of clerk and sheriff, the proviso only permits the sale of the deputation of those offices, and therefore modifies, rather than contradicts, the clause. But does not the clause forbid the sale of the deputation, as well as of the office itself? If you permit a sheriff to sell out his office, to any one, whom he shall make his deputy, I should like to know, what kind of a sale of his office it is, that you prohibit ? or of what practical use such prohibition can be ?
It was also contended, that the history of sheriffs, traced from the earliest annals of the state, adds strength to the opinion, that the proviso intended to legalize a sale of the deputation of the office; by shewing, that this office was intended to pass in rotation through the magistracy of the counties, as a reward for their various services; which would be frustrated, unless they could farm their offices out, as it was well known, that both from their age, when the office usually came to them, and from their personal unfitness in many cases, they could neither execute the office themselves, nor superintend its execution. And for these positions, the laws of the colonial government and of the state, and the practice under them, were referred to.
Let us first look to the laws. I deny that, by them, the office was either directed to pass in rotation, except for a short time, or given as a reward. There is in 1 Hen. Stat. at large, p. 224. an extract, taken from a manuscript book, stating, that in 1634, the country was divided into eight shires, &c. And it is added, “ And, as in England, sheriffs shall be elected to have the same power as there.” This is the first notice of sheriffs in our laws. In the same volume, p. 392. (anno 1655) it is enacted, “that the commissioners (justices) of every county, shall recommend three or more to the governor and council, who shall elect such sheriffs, out of those so recommended, as they &c. shall think most meet and fit for the place.” The first act I can find, confining the office of sheriff to justices (then called commissioners) is in 1660-1, 2 Hen. Stat. at large, p. 21. *51 and the second is 1661-2, Id. p. 78. And the reason assigned for it in the last act, is worthy of notice : “Forasmuch as the commissioners of county courts are, by the laws of this country, answerable for the levies and estreatments each county, of which the sheriff is usually collector, be it therefore enacted, that none but one of the commissioners of each county shall be sheriff of the county; and further, that the commissioners shall exercise the said office, successively, as they hold their places in commission, everyone a whole year and no longer.” Here two things are remarkable: 1. the office was not confined to the magistracy by way of reward; 2. they were to take it in succession. This act seems to have remained in force, till 1705, (3 Hen. Stat. at large, p. 246.) when a law passed, enacting (among other things) that the court of every county shall yearly present to the governor, a list or recommendation of three such persons (being justices) in the same county court, respectively, as they shall think most fit and able to execute the office of sheriff fee. Here, we find, the principle of the office passing in rotation among the justices expressly repealed, and the courts directed to recommend to the governor three such persons, being justices, as they shall think most fit and able to execute the office of sheriff. And this principle of rotation, thus expressly repealed, has not been revived, nor has it received the least countenance from any succeeding law. On the contrary, from the passage of the above law to the year 1748, upwards of forty years, the principle of selecting persons for their fitness and ability, remained express law, and has, in my opinion, given the rule which ought to have governed ever since. For, though the law of 1748 (which has been followed in all the subsequent revisions) says, the justices shall'annually present to the governor a list of three persons of their body (omitting the words, “ such persons as they shall think most fit and abler); yet, as the principle of rotation had been expressly-repealed, I cannot see what rule ought, to have guided their selection, but the superior fitness and ability of the persons *52 chosen; and this,’ more especially, if it should appear that. the office of sheriff was not given to the justices for their benefit or as a reward for their services. This, I think, does appear; 1. from the law before quoted, which assigns a different reason for confining the office to the justices; and 2. from the consideration, that in that early day, when the counties were thinly inhabited and poor, the office was rather a burthen than a benefit: a conclusion greatly strengthened by the fact, that in 1710, the legislature found itself obliged to compel the acceptance of the office, by inflicting the heavy penalty of five thousand pounds of tobacco, on any person commissioned, who should refuse to act; unless such person should make oath, before the court of the county, that he hath used his best endeavour, truly and bona fide, without any covin or collusion, to get security for his performance thereof, and that he could not obtain such security. It is further provided by the act, that no person, who hath served as sheriff of a county, shall be liable to the forfeitures of the act, for refusing to serve a second time, unless every person named in the commission of the peace, hath actually after him served in the office of sheriff, or paid the fine for refusal. This act continued in force, I believe, till the revisal of 1792, the penalty being reduced from time to time. Now, I ask, can better evidence be wanting, to shew, that at the passage of this law, the office was a burthen rather than a benefit ? Do we find it necessary to compel by penalties the acceptance of favours, benefits or rewards ? To make a man purge himself, by oath in open court, of the suspicion of attempting to evade the acceptance and enjoyment of these rewards, by covin and collusion ? If the office had been profitable, would we have seen a proviso exempting a man who had served once, from forfeiture for refusing a second service, unless every other justice had also borne the burthen since his service ? These considerations satisfy me, that when the law passed confining the office to the justices, it was a thing rather to be avoided than sought after, and not given to them as a reward for services, *53 kit imposed upon them as a burthen. That in the lapse of x 1 years, and the progress oí society, the office has become valuable, can certainly have no effect upon the original intention of the legislature. That the practice (since my day at least) has been to appoint the justices to the office in rotation, I admit; how far back it commenced, 1 know not. As a commentary on the law, it would have weight in a doubtful case, but where the law is clear it must speak for itself.
It was also contended, that though the sale of the sheriff’s office be not permitted by law, yet it has been the general idea, that it was so, and the universal practice to farm it out; and that this common error makes it lawful. I cannot assent to this position. The sale of the deputation of this office is expressly forbidden by the statute, unless the proviso excepts it. I have shewn it does not. Here, then, we have the statute law prohibiting the sale under a severe penalty, and declaring the bond given as the price of it void: and we have the law of common error, holding the sale and the bond good. Which shall we follow? We cannot servo two masters. To me it seems, that we can know no law but that derived from the law-making power; and that, in opposition to such laws, error, however common, however hoary, can impose on us no obligation. We ought, in such cases, to examine the law thoroughly, and see clearly, that the common opinion is erroneous, before we decide : but, having done this, and finding that we must either violate the law or correct the error, I cannot conceive how we should hesitate in our course. And this, I think, has been the opinion of this court. No error could be more prevalent, than that one bond would answer for the two years of the sheriff’s office; but this court did not, therefore, shrink from correcting it. It was equally the general opinion, that you might fine a sheriff, toiies quoties, for failing to return an execution; and this was the constant practico: the question, however, at length came before this court, and the error was corrected.' It was said, in the argument of the case of Werrdck and MdMnrdo. also, that the opinion and *54 practice were old and general, that an administrator de bonis non could sue the representative of a former executor, for assets wasted or converted by him: this court, however, took up the question upon the law, not of public opinion, but of the land; and decided, that he could not. Other cases, I have no doubt, might be mentioned.
It was also said, that if we decide, that a deputation of the office of sheriff for a sum in gross, is a sale, it will have no other effect than to add four words to the bargain, and make the price payable out of the profits. What consequences may follow our decision, is not, as I conceive, the exact question before us. That question is, whether by such deputation for a gross sum, the law is violated which forbids a sale ? If it be, we must say so, though the heavens should fall. That such deputation is a sale, was admitted as settled law; and the cases proving it are too numerous to cite. The law, then, pronounces the contract void, and all bonds given under it. If this law may be easily evaded, that can be no reason for our refusing to execute it, though a proper ground for amendment by the legislature.
Upon the whole, I think both bonds, that of the deputy and of the sub-deputy void; and that the motion being on them, cannot be sustained; and, therefore, that the judgment of the court below should be reversed.
Green, J.
This case presents the question, Whether the respective contracts between M’Kinney and Gillingwaters, and the latter and Sailing, were void under our statute prohibiting the buying and selling of offices ?
That statute relates to all such offices, or the deputations of them, or of any part of them, as in any wise touch or concern the administration of the executive government, or the administration or execution of justice, or the receipt or payment of the public revenue, or any clerkship in a court of record ; and prohibits all persons to bargain or sell the same, or to receive or take any thing directly or indi *55 redly for the same, or for a vote in appointing thereto, or to take any promise, agreement &sc. for the payment of any thing for the same, or for a vote in appointing thereto, under the penalty of being incapable of appointing, or voting for the appointment, to any such office or deputation thereof, or of any part thereof, and of being disabled to hold the office, in virtue of which they hold the right to appoint, or to vote in the appointment to the same, and of being amerced and imprisoned, and if a member of the assembly, of being expelled and incapable of being afterwards elected. And every person giving or paying, or making a promise, agreement &c. to give or pay, any thing for the appointment, or for a vote in the appointment, to any such office or deputation thereof, or of any part thereof, is declared incapable of serving in any such office. It moreover declares, that every such bargain, sale, promise, agreement &c. shall be void : with two provisoes: 1. that nothing therein contained shall be so construed as to prohibit the appointment, qualification and acting of any deputy clerk or deputy sheriff, who shall he employed to assist their principals in the execution of their respective offices; 2. that all acts done by any person so offending, by authority or colour of the office or deputation thereof which ought to be forfeited, before he be removed from the office or deputation, shall be valid in such like manner as if the act had never been made.
This statute was taken literally from that of the 5 and 6 Ed. 6. c. 16. with the exception of the proviso in our act in respect to deputy clerks and sheriffs, and of offices touching the administration of the executive government, which are not in the english statute, and of many offices embraced in that which are not touched by our act, none such existing here. The settled construction of the english statute, is, that whenever the agreement is that the deputy shall do all the duties, and receive all the emoluments, of an office, the profits of which are uncertain, and depending upon fees, and shall in consideration thereof pay, or agree to pay, a gross sum to the principal, it is a sale prohibited by the statute. *56 But if he only engages to pay a stipulated sum out of the fees, it does not fall within it. And this was the construction adopted by this court in the case of a sale of the deputation of the office of sheriff, in Noel v. Fisher, 3 Call, 215. a case which arose upon a transaction before our statute was enacted, and when the english statute was in force here.
There can be no doubt but that the enacting part of the Statute extends to the office of sheriff, which emphatically touches and concerns the execution of justice, and the receipt and payment of the public revenue. The only question is, Whether the deputation of that office is wholly excepted out of the enacting clauses by the proviso ?
The literal terms of the proviso import, that only the case of a deputy employed to assist the principal in the execution of his office, and not one employed to do the whole of its duties, is intended to be excepted from the operation of the enacting clauses. Yet, if the proviso was expunged from the act, the employment of a deputy to do the whole of the duties, would not be prohibited. And it is contrary to the nature of a proviso to enlarge the operation of the enacting clauses! To employ a deputy to do the whole business of the office, paying him a fixed sum, or giving him all its emoluments (except a given sum to be paid by him out of them), as a compensation for his services, would, therefore, be the employment of a deputy to assist his principal, within the meaning of the promo. But there was no occasion for any proviso, to except such a case from the enacting clauses, since without the proviso, the case would not fall within the prohibitions of the statute. The only case in which a deputation of the office could come within the enacting clause, is that where the deputy paid or agreed to pay for it, a gross sum, at all events, and independently of the amount of the fees : and if the proviso does not except such a case, it has no effect whatever. For, in that case, the statute would, in respect to the deputation of the office of sheriff, read in effect thus: No sheriff shall sell the deputation of his office, provided, however, that this shall not be *57 >o construed as to prohibit a deputation made without a sale; A which would be absurd, unless there were some doubt, whether the office could be deputed or not, and the proviso was inserted for greater caution, and to sanction deputations which were not contrary to the enacting clause. But there was no shadow of doubt upon that point; for the office of deputy sheriff had been recognized by our statutes, and regulated from the earliest periods of our legislation; and so the office of deputy clerk was also recognized, and only a few years before an oath prescribed to be taken by him, before he could be permitted to act as such.
It was argued, that the offices of clerk and sheriff, and deputations of them, being embraced within the enacting clause, especially that of the former, which is mentioned by name, a construction which would exempt the deputations of them from the operation of the statute, would give to the proviso, not the effect of modifying the general provisions of the enacting clause, but of taking from its operation intirely, one of the cases at least which was embraced by it in express terms, that of the office of clerk of a court of record. A particular attention to the frame of the act, which follows literally that of the english statute, in which there is a proviso excepting.certain offices, will shew, that such would not be the effect of that construction. It begins with prohibiting the sale of any office or offices, or the deputation of any office or offices, or any part or parcel of any of them, or the receiving money &c. for any office or offices, or the deputation of any office or offices, or of any part or parcel of any. of them, or for a vote in appointing to any office or offices, or the deputation of any office or offices, or any part or parcel of them; and then describes the offices, as being those only which shall in any wise touch &c. The general object of the act being to prohibit the sale not only of offices of a particular description, but the deputation thereof, or of any part thereof, with only two exceptions, not of the offices, but of their deputations only, the most simple method was to announce, in the first instance, a general prohibition. *58 and then the particular exceptions, not of any office particularly designated in the several prohibitions, but of its deputation only. Thus, notwithstanding the proviso, the offices of clerk and sheriff may be sold contrary to the statute, or at least a vote in the appointment to them may be so sold; as if any justice of the peace should receive a reward for giving his vote in the appointment of a clerk, or the nomination of a sheriff; or any judge for the appointment, or a vote in the appointment, of any clerk; or a member of the executive, for a vote in the appointment of a sheriff. These cases would fall clearly within the denunciations of tire statute.
These considerations would incline me strongly to the opinion, if we were not to look beyond the terms of the statute itself, that the sale of the deputation of the offices of clerk and sheriff, was not embraced by the statute. Other circumstances lead to the same conclusion.
One of these is to be found in the history of the office of sheriff in Virginia. Until 1655, sheriffs were elected. An act was then passed, directing that the justices of the peace in each county (then called commissioners), should nominate three or more, out of which the governor and council should commission one as sheriff. In 1660, it was enacted, that the office should be conferred upon the commissioners in succession. And so the case remained until 1705; when it was enacted, that no person but a justice of the peace should be appointed sheriff, and that the county courts should annually nominate three justices, one of whom should be commissioned, and that a sheriff might be continued for two years and no longer, the former laws, from 1657 downwards, having prohibited any sheriff, or under-sheriff, to serve for more than one year. In 1710, a heavy penalty was imposed upon any one, who was commissioned, and refused to act. This penalty was, from time to time, gradually moderated and finally dropped at the revisal of 1792.
Although the laws subsequent to 1705, imposed upon the county court and executive, no obligation to nominate and *59 appoint the justices in succession to the office of sheriff; yet the invariable practice has always been, and still is, to pursue that course (which is considered as a matter of right), unless there be some very serious objection to the propriety of appointing the senior justice who has not already held the office. The office, although formerly burthensome, and imposed upon the justices under a heavy penalty, has long since been of some value, and considered as a reward and the only one given to them for their important public services. These justices have been uniformly selected from the most valuable and respectable classes of our community, have borne the chief burthen of the administration of justice, and the whole of that of the internal police of the country. They have, in a great degree, composed our legislative bodies. The office of sheriff, devolving on them in succession, generally comes to them at an advanced age, and when they are unfitted, from that cause, as well as from their previous course of life, and other occupations, to discharge in detail the duties of the office, or even to superintend personally the discharge of those duties by others: and they have, as was to be expected, almost invariably, so far as I am informed, and as indeed is perfectly notorious, farmed their offices to others, without being conscious of violating any law, either municipal or moral. This practice must have been well known to the legislature, which enacted the law in question. And this induces a belief, that the proviso was intended to except the deputation of this office from the general terms of the statute. In a doubtful case, the state of things, to which the provisions of a statute were intended to be applied, may properly be resorted to, as a means of ascertaining its true construction.
Another circumstance entitled to some weight, is, that the statutes of 4 Hen. 4. c. 5. and 26 Hen. 6. c. 10. which expressly prohibited a sheriff to farm (that is to sell the deputation of his office), were in force here, when the legislature were engaged in the business of re-enacting such of the british statutes, as it was thought fit to adopt into our *60 code, as preparatory to the abolition of all the english statutes. And though the statute of Ed. 6. was in substance enacted here, and all our own statutes, respecting the office and duties of sheriff, were also revised and brought into one: yet it was not thought fit to adopt the prohibition of the statutes of Hen. 4. and Hen. 6. of farming the office of sheriff. On the contrary, in re-enacting the statute of Ed. 6. which, whilst it would have prohibited the farming, but not the deputation without sale, of the office, if the proviso in question had not been inserted, they inserted that proviso, for no purpose that I can perceive, but to prevent the operation, which the statute would otherwise have had, in prohibiting the farming of the office.
If, however, these circumstances are not sufficient to justify the conclusion, that, upon the literal construction of the statute the sale of the deputation of the office of sheriff, is excepted from its provisions; still the construction is so doubtful, and the practice in question has so long prevailed, and is so extensive, and the consequences of holding it illegal so extensively ruinous, that if there be any case, to which the maxim communis error facit jus can apply, this is surely one. That maxim has been held in England to sanction practices even expressly against the statutes: Clay v. Sudgrave, 1 Salk. 33. Walton v. Spark, Comb. 321. Herbert v. Binion, Roll. Rep. 223. East Ind. Company v. Skinner, Comb. 342.
If this practice were held to be illegal, and the original contract of deputation held to be void, all collateral contracts of indemnity, or otherwise founded on it, as their consideration, would also be void, and the parties subjected to the high penalties imposed by the law; and, in both respects, very great numbers of persons would be involved: while such a decision would have no effect whatever in preventing the future mischief, which might arise from the practice; since it would only serve to admonish the parties of the necessity of adding to the terms of their contracts, four words *61 {out of the profits), which would not vary the substance of the contract, while it would make it unquestionably valid. If I am right in these views, the argument, that the sale of public offices is malum in se, and against the principles of the common law, and amount to bribery and extortion, is sufficiently answered.
Upon the whole, I think the contract between M’Kinney and Gillingwaters was valid; and that between the latter and Sailing, whether valid or void, can in no way affect M’Kinney, since he was not privy to it. All that we can infer from the facts in the record, is, that M’Kinney having sold the deputation of his whole office to Gillingwaters, the latter substituted Sailing to a part of it, and M’Kinney at his instance admitted the latter as his deputy; he giving surety to M’Kinney, to indemnify him against any loss arising from his acts as deputy, and not to Gillingwaters to indemnify him. Sailing was therefore bound to see that the revenue collected by him was paid into the treasury, so as to indemnify the high sheriff, and paid it over to Gillingwaters at his own peril. The judgment should be affirmed.
Coalter, J. and Cabell, J. concurred.
Brooke, President.
I do not think it of any importance, to inquire into the history of the shrievalty in Virginia, or to ascertain from it, when and whether it was a valuable office, or in what degree it was intended as compensation to the magistrates of the counties; as very little if any light is to be borrowed from those topics, to illustrate the construction of our statute against buying and selling offices, passed in 1792, and which (with the exception of the 4th section) is a copy of the 5 and 6 Ed. 6. then in force here. That it was the practice to sell the deputation of the office of sheriff, either for a gross sum, or a sum to be paid out of the fees of the office, at the time the act of 1792 was passed, there can be no doubt. The first section of that act disables the persons holding the offices therein described, from holding them. *62 who shall bargain or sell any office or offices, or receive or take any money, fee or reward, or any profit, directly or indirectly, or take any promise, agreement, covenant, bond or assurance, for any office or offices, or the deputation of any office or offices, or any part or parcel of those which shall in any wise touch or concern the administration of the executive government, or the administration or execution of justice, or the receipt or payment of the public revenue, by declaring, in the latter part of the section, that every person, so offending, shall be incapable of appointing or voting for the appointment to such office, and shall be adjudged a disabled person in law &c. plainly, and in terms, including and interdicting the deputation of, or appointment to, the office of deputy sheriff, among others, for any fee or reward &c. The second section, corresponding with the first, disqualifies the person, receiving the deputation or appointment of such offices, on the terms interdicted in the first section, from holding or serving in such offices. And the third section declares, that such bargain, sale, promise, bond, covenant, agreement, or assurance, (referring to all those interdicted in the first section), shall be utterly void and of no effect. And then comes the proviso in the fourth section, on the construction of which the case before us depends: it is, that nothing in the act contained, shall be so construed as to prohibit the appointment, qualification and acting of any deputy clerk or deputy sheriff., who shall be employed to assist their principals, in the execution of their respective offices. To give to this section no effect at all, would be a monstrous construction of the act. Though it is admitted, that examples may be found in some of our statutes, in which the legislature, for greater caution, have, by a proviso, excepted a case not before in the act; yet no example can be found, in which a case plainly within the terms of the statute, has been held to be unaffected by a proviso, obviously (as in this instance) intended to take it out of the act, upon any construction of the act founded on its policy, and not on the terms of the proviso. Such an example would justify the *63 court, in almost any case, in departing from the plain loiter of a statute, and giving to it a construction, drawn from what it might suppose a wiser and better policy.
The first section of the act plainly interdicts the buying and selling a large description of offices, including that of deputy sheriff; an office which, it must be admitted, it was the practice to sell, under the existing restrictions upon the abuse of the power, not altogether applicable to other offices, viz. the control of the law, which requires an oath to be taken by the deputy sheriff in open court, and of the court also, which might for good reasons object to his qualification. And to except this office from its operation, and also that of deputy clerk, was not so violent an outrage on the whole policy of the first section as seems to be supposed. To insist, that the proviso means only to except the sale of such office for a sum to be paid out of its fees, would be to give it no effect; as such sale was not within the first section of the act. It was known to the legislature, when the act was passed, to have been so decided by the english judges, on the statute 5 and 6 Ed. 6. from which it copied the section. But the proviso, in its terms, is not susceptible of such an ineffectual construction of its meaning : in it is employed the very language of the first section. It is not to be so construed, as to except the naked appointment &c. of any deputy clerk or deputy sheriff, no appointment of either being prohibited by the first section (but on the contrary indirectly provided for) unless made for fee, reward &c. In terms, too, the proviso applies to the third section, which makes void all bargains, sales &c. Its terms are, that nothing in this act contained (including all its sections) shall be so construed &c. plainly, I think, excepting from the act, the operation of the third section also on bargains, sales &c. entered into for the office of deputy sheriff.
The decision in the case of Noel v. Fisher, in this court, if it can have any influence, is favourable to this construction of our act. That decision was on the english statute, from which the three first sections in our statute are substantially *64 copied. It was in a case arising before the passage of our act of 1792. It pronounced a bond, taken for the office of deputy sheriff, for a gross sum (not to be paid out of the fees of office), to be void, as the english courts had before done, on the statute of Ed. 6. And it can hardly be doubted, that, though that decision was after our statute upon a case arising before it, the law of it was well known to the legislature from the english decisions long before $ and it is not conceivable, that in the fourth section of our act (the proviso), it meant to take a case out of the operation of it, which had never been considered as within the act of Ed. 6. but the contrary, by the english judges. I think such a construction inadmissible on every ground, and that the case before us is within the proviso; and that, therefore, the judgment must be affirmed.

Judgment affirmed.