Parker, ./.
As to the first question, taking it to refer to the operation of the statute of 1821-2, ch. 26. § 2.—a large majority of the judges are of opinion, upon the facts agreed, that the defendant’s acting the second year as deputy sheriff, under a contract made ftie first year with the high sheriff for his whole term, was not such an acceptance of office, after the passing of that statute, as, under it, vacated his office of justice of the peace. lie continued in office after the date of the statute, hut it was under the old contract; and the court thinks that there should have been some distinct act of acceptance, by taking a new oath, giving a new bond, making a new contract, or otherwise, in order to bring him within the terms of that law. The court, therefore, answers the first question in the negative.
Upon the second question, there has been a great difference of opinion among the judges, both at the last and present term; the court, then, being equally divided, and there being now a division in the court, ten judges to eight.
Every one agrees, that, at common law, the two offices are totally incompatible, and that the acceptance of the one *804 vacates the other. The case of Amory v. The justices of Gloucester, in this court, decides this principle in the case of a deputy clerk, by the unanimous opinion of the judges; and that of a deputy sheriff, who is recognized by the law as a public officer, and who is directly responsible to the county court, for the due discharge of many of his duties, is still stronger. The point of difference does not lie here, but arises out of other considerations. It is said, that the office of high sheriff is,'by the express provision of the statute concerning sheriffs, to be filled from the county court bench; that it could never have been the intention of the legislature, to make the acceptance of that office, vacate the other office, which constituted the very qualification of the one accepted; that such a construction would sweep away the whole bench of justices, and render what was intended as a reward for services, a disqualification for the office in which those services were rendered; that the statute alluded to, has always been construed to exempt the office of high sheriff from the operation of the common law principle; and assuming such construction to be the right one, there is no reason why the subordinate office of the same kind should not follow the nature of the principal: that, in point of fact, such has been the understanding and settled usage of the country, and it is now too late to disturb it, since the common error may, in this as in other cases, make the law. But a majority of the court is of opinion, that the office of deputy sheriff stands, under our law, upon a different footing from that of high sheriff, and that none of the reasons which are urged in favour of the latter, apply to the former, office—That the statute alluded to, embraces the case of the high sheriff alone; and if, as they agree, it must be so construed as to allow him to resume his office of justice of the peace, it is a personal privilege which ought not to be extended—That the law casts the office of high sheriff upon a justice of the peace, but it is silent as to the deputy, and the high sheriff may select his deputy from any class of society; and if the latter voluntarily accepts and *805 exercises an office clearly incompatible with the one he holds, there is no good reason for exempting him from the operation of a sound and acknowledged principle, which would go far to weaken and destroy the principle itself, —That, as to usage, it ought to have no weight, unless it has been general, uncontroverted and uniform,—That there is no evidence of any usage in this case, of which the court can judicially take notice; and so far as our information extends, there has been no uniform or unquestioned usage on the subject; on the contrary, it is believed (as the statute of 1821-2, ch. 26. declares) that “ different practices in relation thereto, have prevailed in different parts of the commonwealth”—That that statute is merely, as appears upon its face, “ a declaration of the law” in this case—And that, as the common law is clear, indisputable, and founded upon wise principles of policy, and no act of the legislature, or uniform, recognized and acknowledged usage controlling it, is established, the second question propounded by the circuit court of Washington, ought to be answered in the affirmative.
In this opinion, nine of the other judges concurred.
Scott, J.
The nearly equal division of the court upon one of the questions involved in this case, if it does not require, justifies me, in stating the grounds on which I dissent from the opinion of the majority.
The question is, whether prior to and independently of the statute of 1821-2, ch. 26. the acceptance and exercise of the office of deputy sheriff by a justice of the peace, ipso facto, vacated the latter office. According to the well settled principles of the common law, two offices the duties of which are incompatible, cannot be held by the same person at the same time; and the acceptance of one by a person holding the other vacates that other. It requires no argument to prove, that the duties of a justice of the peace, who is one of the judges of the county court, and those of *806 sheriff of the same court, are incompatible, and consequently, by the rules of the common law, the acceptance of the office of sheriff, whether principal or- deputy, by a justice of the peace, would vacate the office of justice of the peace. ■
“Until 1665, sheriffs were elected. An act was then passed, directing that the justices of the peace of each county (then called commissioners) should nominate three or more, out of which the governor and council should commission one as sheriff. In 1660, it was enacted, that the office should be conferred on the commissioners in succession; and so it remained until 1705, when it was enacted, that no person but a justice of the peace should be appointed sheriff”—per Green, J. in Salleng v. M’Kinney, 1 Leigh, 58. No material change has been made up to the present time. The act of 1705 does not declare, that the office of sheriff shall be conferred on the justices in succession; but such has been the practice under it. These statutes then, declare, that the possession of the office of justice of the peace, is a necessary qualification for the office of sheriff. It would be a strange state of things, to require the possession of one office as a necessary qualification for another, and by conferring that other to deprive the party of that which qualified him to receive it; to declare that the justices of the peace form a class so meritorious as to be exclusively entitled to the office of sheriff, and yet that the individual who receives this reward of merit, shall instantly lose his caste; that the law, which, in a manner, .casts upon him the office of sheriff because he is a justice, should take from him the office of justice because he is a sheriff. This would be to confer upon the two offices, by the same provision, the opposite qualities of attraction and repulsion. Again: by the requisition of the former law, and the practice under the statute of 1705, this office of sheriff is given to the justices in rotation. To give to it .the disqualifying effect it had at common law, would make it the instrument of sweeping, one by one, every justice from the bench. *807 This never could have been the intention of the legislature. It seems clear, then, that the principle of the common law, so far at least as the office of high sheriff is concerned, is repealed by these statutes. It is conceded, however, that none of the reasons which have brought us to this conclusion, apply to the case of a deputy sheriff. His office is not bestowed upon him because he is a justice : it is not given as a reward for former services: the office is in no sense cast upon him by the law. If then we were to construe these statutes, without reference to the usage of the country, we should probably have not much difficulty in deciding, that they do not extend to the case of a deputy sheriff. It may, however, be fairly insisted, that, as the legislature clearly meant to declare that the offices of justice of the peace and sheriff are not incompatible, so far at least as the high sheriff is concerned; as this intent is not declared by express words, but deduced by construction $ as there is nothing peculiar to the office of deputy sheriff, to induce a discrimination; and as there is nothing in the statute from which an intent to make such a discrimination can be inferred 5 therefore, no such discrimination exists, and the office of deputy sheriff stands on the same footing, in this respect, as that of high sheriff. This construction is sanctioned, so far as my observation and information extend, by the practice of the whole state, as far back, for aught that appears to the contrary, as the enactment of the statute conferring the office of sheriff on the justices of the peace.
It is said, however, that the preamble of the act of 1821-2, ch. 26. declares that the practice has been different in different parts of the state. The recital in that preamble does not necessarily embrace the case of deputy sheriff If it did, it would certainly be a high authority. But I think, that it may be safely affirmed, that the practice, if not universal, has been very general.
It is said too, that this usage is not evidenced by any judicial decisions. If this kind of evidence is necessary, it must have a beginning, and why should we not, be the first *808 to furnish it ? It cannot, I think, be doubted that the court may take notice of a fact of general notoriety. That a particular construction has been placed on a statute, an,d long acquiesced in, is always considered a strong reason why a court should so construe it; and if no evils will be produced by adhering to that construction, and evils will arise by departing from it, we have a stronger motive for adhering to it. No possible mischief can be perceived, as likely to arise from adhering to the construction, which has hitherto been placed on these statutes. The only material effect of a change will be, to remove some old and worthy members of the county court bench, to the end that their younger brethren may obtain the office of sheriff a little sooner than in the ordinary course of things it would come to their turn. The party who is the object of the proceedings in this case, doubtless accepted the office of deputy sheriff, under the impression that he wbuld not thereby divest himself of the office of justice of the peace. Under this impression, he returned to the bench, and has continued to perform the duties of a justice. To say to him now, that he is an usurper • of the latter office, would be, at the least, harsh language. To deprive him of the office of high sheriff in his turn, the only reward for his services as justice, and confer it on a younger justice, would, I think, be unjust. A practice so generál and long settled, known to and acquiesced in by every department of the government, has the force of law. I should hesitate before I gave to usage, the effect of repealing a statute, though I should not be without authority even for that. See the cases cited by Green, J. 1 Leigh, 60. The usage in question, is opposed to nothing but a principle of the common law, which itself has no other sanction.
It is said that the statute of 1821-2, ch. 26. declares the law to have been otherwise. Whatever efficacy the omnipotence of the british parliament may give to a declaratory statute, neither the old nor the new constitution authorizes that kind of legislation in Virginia. It belongs to the *809 legislature to say what the law shall be; to the courts to say, what the law is.
Upon the whole, I am of opinion that the incompatibility which existed at common law, between the offices of justices of the peace and sheriff, was removed by our statutes above alluded to, and that those statutes embrace both the deputy and the high sheriff.
Seven of the judges concurred in the opinion of Scott, J.